42848. ZEPP et al. v. MAYOR & COUNCIL OF THE CITY OF ATHENS.
(339 SE2d 576)

MARSHALL, Presiding Justice.

In this case, plaintiffs are purchasers of water from the City of Athens' water system through meters located within Clarke County but outside the Athens city limits. They filed this complaint in which they aver that the rates charged them for water are 2.25 times the rates charged persons who purchase water inside the city limits. They seek a declaratory judgment that the city's water ordinance is unconstitutional in that it deprives the plaintiffs of property without due process of law. They also argue that the water-service agreement between them and the city is an open-price term contract which should be set aside under the UCC, OCGA § 11-2-305, because the city has not fixed the price in good faith. In addition, the plaintiffs argue that their agreement with the city violates the unconscionability provision of the UCC. OCGA § 11-2-302. The superior court converted defendants' motion to dismiss for failure to state a claim for relief into a motion for summary judgment, which was granted. The plaintiffs appeal, complaining of the superior court's rulings on the merits of their complaint and also complaining of the court's conversion of the motion to dismiss into a motion for summary judgment.

1. (a) In *City of Moultrie v. Burgess,* 212 Ga. 22 (90 SE2d 1) (1955), plaintiffs were nonresidents of the City of Moultrie who purchased water from a municipal water works system. In *Burgess,* plaintiffs were complaining that the city, in the operation of its water system outside its corporate limits, was a public utility which could not make any greater charge for its water service than that which would constitute a fair and reasonable return on the amount it had invested therein. Plaintiffs also argued that they were charged much higher rates than city residents and that such discriminatory charges for water service were unconstitutional in that plaintiffs were thereby denied equal protection of the law.

This court disagreed. In Division 1 of the *Burgess* opinion, it was held that, " '[a] municipal corporation does not become in any sense a public utility by reason of the fact that it is empowered to operate and does operate an electric-light and water plant.' *Ga. Public Service Com. v. City of Albany,* 180 Ga. 355 (2) (179 SE 369)." 212 Ga. at p. 23. In Division 3, it was held, "[i]n *Barr v. City Council of Augusta,* 206 Ga. 753 (58 SE2d 823), it was held: 'A municipal corporation may not compel any person outside its territorial limits to accept water

service which it undertakes to furnish, nor may the municipal authorities be compelled to render such service. A municipal corporation may classify rates to be charged in outlying territories, and upon failure of customers to pay such charges, the municipal corporation may discontinue its service.' See, in this connection, *Collier v. City of Atlanta*, 178 Ga. 575 (173 SE 853); *Messenheimer v. Windt* [211 Ga. 575 (87 SE2d 402) (1955)]. In *City of Phoenix v. Kasun*, 54 Ariz. 470 (97 Pac.2d 210, 127 ALR 84), which quotes at length from *Collier v. Atlanta*, supra, and which deals with water customers of the city residing outside of its corporate limits, it was said that the courts may determine whether or not the terms, including rates, on which one obtains service from a city are reasonable if the service is based upon a legal right, regardless of contract; but if his right to receive service is based solely on a voluntary contract with the city, that contract is subject to review by the courts only in the same manner as any other private contract, and it is not for them to determine whether its provisions are arbitrary, unreasonable, or discriminatory." Id. at p. 24.

(b) In the landmark case of *Collier v. City of Atlanta*, supra, the court specifically held that the classification of water rates, under which higher charges are imposed on nonresidents of the city than are imposed on city residents, does not violate either the due process or equal-protection clauses.

(c) In *Messenheimer v. Windt*, supra, the City of Macon was supplying water to persons residing outside the city limits. Certain nonresidents brought suit, seeking to enjoin municipal ordinances and resolutions fixing higher water rates for consumers residing outside the city than for city residents. Arguing that they were being denied equal protection of the law and being deprived of property without due process of law, the plaintiffs contended that the city was appropriating revenues from the sale of water for purposes other than the cost of maintaining and operating the water-works system; that the effect of this was to avoid an increase in ad valorem taxation of property within the city limits; and that this was, in effect, an indirect tax upon nonresident water users. Under the holdings in *Collier* and *Barr*, this court affirmed the trial court's dismissal of the plaintiffs' complaint, holding in Division 1 (a) that the charge for this service was not in any sense a tax.

(d) In *Barr v. City Council of Augusta*, supra, plaintiffs were nonresidents of the City of Augusta, who were complaining about being charged twice as much as city residents for water from the municipal water-works system. This court, in Division 1 of its opinion, did indicate that the courts would be authorized to interfere in the municipality's setting of water rates for nonresident users " 'in a clear case of mismanagement or fraud.' *McMaster v. Waynesboro*, 122 Ga. 231 (5) (50 SE 122); *South Georgia Power Co. v. Baumann*, 169 Ga.

649, 652 (151 SE 513); *Lawson v. Moultrie*, 194 Ga. 699, 703 (22 SE2d 592)." 206 Ga. at p. 753.

(e) In this case, the plaintiffs' argument, that the rate structure contained in the Athens water ordinance is unconstitutional, is predicated on the assertion that the differential rates charged city residents and nonresidents are unrelated to the cost of providing water service and constitute an exploitation of nonresident customers in order to avoid levying taxes upon city residents. This precise argument has been resolved adversely to the plaintiffs in the previously cited decisions.

2. It follows that jurisdiction of this appeal is in the Court of Appeals.

A constitutional question is within this court's jurisdiction if it involves either a construction of some federal or state constitutional provision, or an attack upon the constitutionality of some law of this state or the United States (or an ordinance). *McGill v. State*, 209 Ga. 282 (71 SE2d 548) (1952). "The words 'construction of the Constitution,' etc., as thus employed, contemplate construction where the meaning of some provision of the Constitution is directly in question and doubtful either under its own terms or under the decisions of this court or the decisions of the Supreme Court of the United States." *Woodside v. City of Atlanta*, 214 Ga. 75, 76-77 (1) (103 SE2d 108) (1958). Where a law has been held to be constitutional as against the same attack being made, the case requires merely an application of unquestioned and unambiguous constitutional provisions and jurisdiction of the appeal is in the Court of Appeals. *Huguley v. State*, 225 Ga. 191 (2) (167 SE2d 152) (1969).

3. Where the plaintiff attacks the validity of a statute and seeks to enjoin its enforcement, the injunctive feature of the case is considered to be ancillary to the other relief sought and will not, in itself, vest jurisdiction in this court. See *Baranan v. Ga. State Bd. of Nursing Home Administrators*, 239 Ga. 122 (236 SE2d 71) (1977).

Accordingly, this appeal is transferred to the Court of Appeals.

*Transferred to the Court of Appeals. All the Justices concur.*

DECIDED FEBRUARY 18, 1986.

*Sidney L. Moore, Jr.,* for appellants.
*Dennis Galis, Robert B. Langstaff,* for appellees.