A95A1920. QUIKTRIP CORPORATION v. CHILDS.
(469 SE2d 763)

RUFFIN, Judge.

Butch Childs sued Quiktrip Corporation ("Quiktrip") for injuries he sustained when he slipped and fell on an ice patch in Quiktrip's parking lot. The jury returned a verdict in favor of Childs, and Quiktrip filed motions for judgment notwithstanding the verdict ("j.n.o.v.") and for new trial. Quiktrip appeals from the trial court's order denying the motions. For reasons which follow, we affirm.

Viewed in a light to support the verdict, the evidence showed that at approximately 7:20 a.m. on the day of his accident, Childs and his brother drove to the Quiktrip, where Childs had been many times, to get gas. He described the morning as a "beautiful December morning" with clear skies, no clouds and no rain. Childs drove his car up to the gas pumps and filled it with gas. As he walked toward the store to pay, Childs slipped and fell on a patch of ice. Childs testified that he was looking where he was walking. He described the parking lot concrete as "dingy" and stated that the ice patch "just looked like another spot just like the grease spots that's all over it." Childs further stated that the patch "blended together" with these other spots and

that he did not realize he slipped on ice until after he fell.

1. In its first enumeration of error, Quiktrip asserts that the trial court erred in failing to give its requested charge regarding open and obvious conditions. We disagree.

Although the trial court refused to give Quiktrip's requested charge, the record shows that the court charged the jury that the plaintiff was required to use his eyesight to discover dangerous conditions in his path and that if the plaintiff's failure to exercise ordinary care caused his injuries, then he could not recover from the defendant. The trial court also charged the jury on comparative and contributory negligence and superior knowledge.

We note initially that " 'simply because a request to charge is apt, correct and pertinent, it is not necessarily error to fail to charge it. The test is whether the court substantially covered the principles embodied therein or whether it was sufficiently or substantially covered by the general charge.' . . . [Cit.] In other words, we look at the charge as a whole. [Cit.]" *Monroe v. Southern R. Co.*, 210 Ga. App. 597, 598 (2) (436 SE2d 568) (1993). We find that the charges given by the trial court in this case were correct statements of the law and gave the jury sufficient guidance to decide who was responsible for Child's injuries. See *Unique Designs v. Pittard Machinery Co.*, 200 Ga. App. 647, 652 (2) (b) (409 SE2d 241) (1991).

Moreover, we have previously held that where the jury was charged on contributory and comparative negligence, a request to charge on open and obvious conditions was incomplete because it did not "adequately [distinguish] the 'open and obvious' rule from the applicable affirmative defenses. . . ." *Continental Research Corp. v. Reeves*, 204 Ga. App. 120, 127 (3) (419 SE2d 48) (1992). Furthermore, as in *Reeves*, the charge Quiktrip requested "failed to inform the jury of their duty to determine whether an open and obvious peril existed under the attendant facts." Id. We found that without such additional instructions, the requested charge presented "a fair risk of both confusing and misleading the jury." Id. The same dangers are presented by the requested charge in this case. For all the foregoing reasons, we find this enumeration to be without merit. Id.

2. Quiktrip asserts that the trial court erred in denying its motion for a directed verdict and for j.n.o.v. because the evidence demanded a finding that the alleged defect was an open and obvious condition of which Childs had equal knowledge.

"A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions, demands a particular verdict. [Cit.] The evidence is construed most favorably for the nonmovant. [Cit.] In order to recover for a slip and fall, resulting from a foreign substance, the plaintiff must show that the proprietor had actual or constructive

knowledge of the foreign substance and that the plaintiff was without such knowledge of it. [Cit.] '[He] must exercise ordinary care for [his] own safety to avoid the effect of the proprietor's negligence after it becomes apparent to [him] or in the exercise of ordinary care [he] should have learned of it.' [Cit.]" *Food Lion v. Johnson*, 214 Ga. App. 390 (448 SE2d 59) (1994).

Citing *McIntyre v. Corp. Prop. Investors*, 160 Ga. App. 868 (288 SE2d 584) (1982), Quiktrip argues that because Childs testified that he noticed a dark spot on the pavement, the evidence showed he had at least equal knowledge of the dangerous condition. However, in *McIntyre*, the plaintiff "made a conscious decision to step upon a surface which she visually perceived to be *different from the surface* of the immediate surrounding premises. . . . The plaintiff in *McIntyre* deliberately stepped into what appeared to her to be a 'dark patch' on the surface of a parking lot, the surface of which parking lot was otherwise dry and free of ice or *any other dark patches*." (Emphasis supplied.) *Pennington v. Cecil N. Brown Co.*, 187 Ga. App. 621, 623-624 (3) (371 SE2d 106) (1988).

"When the evidence in this case is construed most strongly in [Childs'] favor, [he], entirely unlike the [plaintiff] in . . . *McIntyre*, did not consciously choose to step onto a 'wet' or 'dark' surface which appeared to [him] to be visually *different* from the immediately surrounding surface." (Emphasis in original.) Id. at 624. Rather, the evidence showed that there were numerous dark patches on the dingy pavement, and that this particular dark patch, although composed of ice, blended in with the other dark patches. This evidence does not demand "a finding that . . . [Childs] had at least equal knowledge of the alleged defect which caused [him] to fall. [Cits.]" Id. Accordingly, it was not error to deny the motion.

3. Quiktrip asserts that the trial court erred in allowing Childs and his brother to testify as to hearsay statements allegedly made by a Quiktrip employee after he learned of the accident.

The record shows that immediately after Childs fell, his brother assisted him into the convenience store. Once inside the store, the pair informed the three Quiktrip employees on duty that Childs had fallen, broken his wrist and that he was in pain. According to the testimony of Childs and his brother, one of the employees then stated that several other people had complained about slipping on ice but that they were too busy to take care of the problem. Over Quiktrip's hearsay objection, the trial court admitted this testimony as an admission by an agent.

" '(OCGA § 24-3-33) states: "The admissions by an agent or attorney in fact, during the existence, and in pursuance of his agency, shall be admissible against the principal." (OCGA § 10-6-64) states: "The agent shall be a competent witness either for or against his prin-

cipal. His interest shall go to his credit. The declarations of the agent as to the business transacted by him shall not be admissible against his principal, unless they were a part of the negotiation, and constituting the res gestae, or else the agent is dead." The Code sections must be construed together, and the second effectively limits the scope of the first. (Cit.)' [Cit.]" *Brooks v. Kroger Co.*, 194 Ga. App. 215, 216 (2) (390 SE2d 280) (1990). In order to be part of the res gestae, the statement " 'must be contemporaneous with the main fact, but need not be precisely concurrent in point of time(;) it is sufficient if such declarations spring out of the transaction, if they elucidate it, if voluntary and if made at such time as reasonably to exclude the idea of design.' [Cits.]" *Brown v. City of Fitzgerald*, 177 Ga. App. 859, 862 (3) (341 SE2d 476) (1986).

In this case, the statement objected to was part of the res gestae. Although the statement was not made contemporaneously with Childs' fall, it was made immediately thereafter, and more importantly, directly after Childs informed the employee of his injuries. The employee's declaration, in essence, sprang from Childs' revelation about his accident and explained why the employees had not remedied the ice patch. Under the circumstances, it is clear that the statement was voluntarily made and that there was no time for afterthought or design by the employee prior to making it. Accordingly, the trial court did not err in admitting the statement. See id. See also *Aetna Life Ins. Co. v. Jones*, 80 Ga. App. 472, 479-480 (2) (56 SE2d 305) (1949).

Nor do we agree with Quiktrip that the testimony constituted double hearsay in that it described what an unidentified individual told the store employee. "As a fundamental rule, the definition of hearsay does not include out-of-court statements which are not offered as proof of the facts asserted in such statement, but are offered merely as proof that such a statement was made." Green, Ga. Law of Evidence (4th ed.) Hearsay, § 218. Here, the issue was not whether the unidentified individuals were telling the truth when they informed the Quiktrip employees about the ice, but rather, whether Quiktrip had notice of the hazardous condition. Thus, this testimony would be "direct evidence of the fact in issue: [Quiktrip's] notice of the [hazard]." *Huddleston Concrete Co. v. Safeco Ins. Co. &c.*, 186 Ga. App. 531, 538 (5) (368 SE2d 117) (1988).

4. Quiktrip asserts that the trial court erred in denying its motion for a directed verdict and j.n.o.v. because Childs failed to show it had superior knowledge of the dangerous condition. Quiktrip argues that although its employees received prior complaints about the ice, the evidence showed those complaints were made only thirty seconds to one minute before Childs fell.

At trial, one of the Quiktrip employees who was working at the

time of the accident testified that at about 7:00 that morning, a customer came in and told him that "he was trying to survive the parking lot, it was slippery." The employee stated that he stopped what he was doing, went to put something on the slippery spot and that as he was passing by the window, he saw Childs on the ground. He stated that only 30 seconds elapsed from the time he learned of the ice to the time he saw Childs on the ground.

We set forth the law applicable to the grant of a directed verdict in Division 2. Under that standard, we find that the employee's testimony that he learned of the ice at 7:00 a.m., only 30 seconds before Childs' fall, conflicts with Childs' own testimony showing that he fell a few minutes after 7:20 a.m. Whether 30 seconds or 20 minutes elapsed between Quiktrip's notice of the ice and Childs' fall is a conflict that must be construed in Childs' favor. See *Food Lion,* supra. Given the conflicting evidence concerning Quiktrip's prior notice of the condition, the trial court did not err in denying the motion for a directed verdict.

5. Quiktrip also asserts that the trial court erred in denying its motion for a directed verdict and j.n.o.v. regarding Childs' claim for lost wages because there was insufficient evidence to prove the amount of those damages.

Lost wages and earnings are recoverable where the evidence shows the amount of the loss with reasonable certainty and the evidence permits the jury to determine the amount of the loss without speculation or guesswork. *State Farm &c. Ins. Co. v. Ainsworth,* 198 Ga. App. 740, 744 (1) (c) (402 SE2d 759) (1991).

In this case, Childs presented evidence showing he worked in the construction industry building sheetrock walls and ceilings. Although Childs testified that little work had been available for the two to three years preceding his accident and that he faced several layoffs during that time, he presented testimony and tax returns showing his income for the years 1990, 1991 and 1992, the year of his accident. The evidence showed that thereafter Childs was unable to work in the construction industry due to his injuries and that he has a small income from a business at a flea market. This evidence was sufficient to enable the jury to determine Childs' lost wages with reasonable certainty. See *Mote v. Tomlin,* 136 Ga. App. 616, 618 (2) (222 SE2d 57) (1975).

6. In its last enumeration of error, Quiktrip asserts that the trial court erred in denying its motion for directed verdict and j.n.o.v. regarding a portion of the jury's verdict for $4,066 in damages. Quiktrip contends that this award was based on Childs' medical bills for which he did not seek recovery.

The record shows that upon tendering the medical bills into evidence, Childs' attorney stated as follows: "We are introducing them

only to show the extent of the injury. We're not seeking recovery of the medical bills themselves." The total amount of the bills admitted was $4,066.08. Although the jury was not charged concerning an award of medical damages, it awarded "$4,066 for damages" in addition to its award for lost wages and pain and suffering.

On appeal, a jury's award cannot be successfully attacked "unless it is so flagrantly excessive or inadequate, in light of the evidence, as to create a clear implication of bias, prejudice, or gross mistake on the part of the jurors. . . . Moreover, the trial court's approval of the verdict creates a presumption of correctness that will not be disturbed absent compelling evidence." (Citations and punctuation omitted.) *Brown v. Southern Aggregates Co.*, 207 Ga. App. 886, 888 (1) (429 SE2d 294) (1993).

We believe that the evidence in this case demands that the court's judgment as to the $4,066 in damages be reversed. It is obvious from the record that the jury based its award on the medical bills submitted by Childs, for which, by his own admission, he was not seeking recovery. In light of the court's charge to the jury and all the evidence of damages presented, there is no plausible explanation for the jury's award other than a mistaken belief that Childs was entitled to compensation for those medical bills. Because he was not seeking such compensation, we are compelled to find that the trial court erred in not granting Quiktrip's motion for j.n.o.v. as to the $4,066 in damages. The judgment shall be reduced accordingly.

*Judgment affirmed in part and reversed in part with direction. Beasley, C. J., and Pope, P. J., concur.*

DECIDED MARCH 6, 1996.

*Sullivan, Hall, Booth & Smith, Roger S. Sumrall, Heather R. Clark*, for appellant.

*Freeman & Hawkins, Alan F. Herman, B. Rose Miller*, for appellee.